**The PEOPLE of the State of Colorado, Complainant,**

v.

**William H. FOSTER, Jr., Attorney-Respondent.**

**No. 85SA368.**

Supreme Court of Colorado, En Banc.

Jan. 13, 1986.

QUINN, Chief Justice.

Two complaints were filed with the Grievance Committee charging the respondent, William H. Foster, Jr., with four counts of professional misconduct. The allegations of professional misconduct encompassed a wide range of activities, including acts of misrepresentation and deceit, the simultaneous representation of conflicting interests, improper efforts by the respondent to exculpate himself from malpractice liability, improper borrowing of money and mishandling of a client's funds, refusal to return a client's file, and failure to account for moneys paid to the respondent by his client. The two complaints

were consolidated for hearing before a hearing board of the Grievance Committee on July 22, 1985. The respondent, who represented himself, failed to appear at the hearing even though he had been timely notified of the hearing date by certified mail and by personal communication from the disciplinary prosecutor. After unsuccessfully attempting to contact the respondent by telephone, the hearing board proceeded with the hearing on the four counts of professional misconduct. The board made findings of fact with respect to each of the four counts and entered conclusions of law predicated on those findings.

### Count One

Count one related to the respondent's business association with Stanley J. Lake and the respondent's handling of various legal matters on behalf of Lake. The hearing board found that the respondent and Lake belonged to a common trade organization in which members could barter their services to other members. In 1980 the respondent entered into an arrangement whereby he traded his legal services to Lake in exchange for locksmithing services received from Lake. The respondent later offered to review and update the corporate files of three corporations owned by Lake without any charge for this service. In the process of reviewing the files, however, the respondent appointed himself as corporate counsel by inserting his own name in the corporate minutes. This action was taken by the respondent without prior authorization from Lake.

The board also found that in the fall of 1983 the respondent, at Lake's request, filed and obtained a default judgment for $4,975 on a debt owed to Lake by another. Despite repeated requests by Lake, the respondent took no action to satisfy the judgment and refused to return the case file to Lake.

In addition to his locksmith trade, Lake had developed the concept of "Luxury Budget Motels." The board found that Lake retained the respondent in 1983 to do legal work for a corporation that Lake and three other persons were forming for the purpose of acquiring land and building one or more motels in keeping with Lake's original concept. The respondent became closely involved with the three other participants in this venture, but led Lake to believe that he represented only Lake's interests. At no time did the respondent advise Lake that he should retain independent counsel or that there was a possibility of a conflict of interest in the ongoing arrangement. By early 1984 the respondent stopped returning Lake's phone calls and moved his office, with the result that Lake had to expend considerable effort in locating the respondent. When Lake did contact the respondent, he requested him to produce copies of the corporate records, but the respondent refused to comply with this request. In April 1984 Lake terminated his relationship with the respondent and requested the return of all files and documents as well as an accounting of any fees owed to the respondent. The respondent again failed to respond to Lake's request.

A number of files were ultimately turned over to the disciplinary prosecutor's office after Lake filed a complaint with the Grievance Committee. It was at this time that the respondent submitted a statement for his services to Lake. The statement, however, included charges for the review and update of all of Lake's corporate files, including the files of the three corporations which the respondent had agreed to review and update without charge.

With respect to count one, the hearing board concluded that the respondent's actions constituted professional misconduct in the following particulars: conduct adversely reflecting on the respondent's fitness to practice law in violation of DR 1–102(A)(6) and C.R.C.P. 241.6; accepting and continuing multiple employment when representing differing interests that might impair independent professional judgment in violation of DR 5–105(A) and (B); neglect of a legal matter entrusted to a lawyer in violation of DR 6–101(A)(3); failure to carry out a contract of employment entered into with

a client for professional services in violation of DR 7–101(A)(2); and failure to promptly deliver to the client the client's property in violation of DR 9–102(B)(4).

### Count Two

The hearing board found with respect to count two that the respondent served as corporate counsel to Heritage Pools, Inc., a closely held corporation. In order to assist in the resolution of a dispute between the two major corporate owners, the respondent prepared a stock purchase agreement which included a paragraph releasing the respondent "from any liability and/or claims which may arise as a result of the herein transaction."

The board concluded that the insertion of this paragraph into the stock purchase agreement constituted an attempt by the respondent to exonerate himself or limit his liability for malpractice in violation of DR 6–102(A) and C.R.C.P. 241.6.

### Count Three

As to count three, the hearing board found that in 1979 the respondent told one of his clients, Charles Arnold, that he (the respondent) was representing and had an ownership interest in a new company, Walking Tall, Inc., which had a patent on a boot tree device and which needed funding for the production of this device. Arnold agreed to make a personal loan of $17,000 to the respondent so that the respondent could use the money to fund the production of the device. At the time the loan was made, however, the respondent failed to give Arnold a promissory note, any security for the loan, or other evidence of the loan. Furthermore, the respondent never advised Arnold to seek independent counsel with respect to his decision to make the loan. After the loan was made, the respondent deposited the money in his personal bank account and then issued a check in the amount of $16,400 to Walking Tall, Inc. The check failed to clear because the respondent's personal checking account had insufficient funds. Although the respondent led Arnold to believe that he intended to pay back the loan from his own personal funds, he nonetheless transferred $13,000 from his personal account to the account of the corporation. Following this transfer the respondent, in his capacity as vice-president of Walking Tall, Inc., executed a promissory note to Arnold in the amount of $17,000 payable on April 30, 1981. The note was not paid on that date, and in September 1981 Walking Tall, Inc., filed for bankruptcy.

Arnold attempted to collect the loan from the respondent in 1982. Although the respondent agreed to pay at least $100 a month to apply to the interest on the note, he failed to make any payments. In 1985 Arnold and the respondent entered into a settlement agreement in which the respondent promised to pay $21,000 in full satisfaction of the principal and past due interest. The agreement provided that the respondent would pay $250 a month during February, March, and April 1985, and then pay the balance on May 15, 1985. No payments, however, were ever made by the respondent, and the debt still remains unpaid.

The hearing board concluded that the respondent's actions constituted deceit or misrepresentation in violation of DR 1–102(A)(1), DR 1–102(A), (4), and C.R.C.P. 241.6, and conduct adversely reflecting on his fitness to practice law in violation of DR 1–102(A)(6). The board also concluded that the respondent's conduct violated DR 5–104(A), which provides as follows:

A lawyer shall not enter into a business transaction with a client if they both have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

### Count Four

The final count related to the respondent's representations to a Grievance Committee investigator concerning the Arnold loan on which count three was based. The hearing board found that the respondent told the investigator that he had placed the

loan funds in a trust account and that he later transferred the funds to the corporation. The statement was false, however, since the funds were deposited in the respondent's personal checking account and only some of the funds were ultimately transferred out of that account to the corporation. In addition, the board found that the respondent failed to produce, as requested by the investigator, copies of his records reflecting the deposit of the loaned moneys to Arnold.

With respect to count four, the hearing board concluded that the respondent had obstructed the Grievance Committee in the performance of its duties in violation of DR 1–102(A)(1) and C.R.C.P. 241.6(7), and that he had engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation in violation of DR 1–102(A)(4) and conduct that adversely reflected on his fitness to practice law in violation of DR 1–102(A)(6).

The hearing board recommended that the respondent be disbarred, and a hearing panel approved the findings, conclusions, and recommendation of the board. While we agree that the respondent's conduct constituted serious and continuing violations of the Code of Professional Responsibility, we believe that an appropriate sanction is a three year suspension from the practice of law.

The respondent was admitted to the practice of law in this state in 1978, and his only prior discipline was a letter of admonition relating to his failure to timely respond to a grievance complaint that was ultimately dismissed by the Grievance Committee. Moreover, the hearing board noted the presence of some mitigating circumstances in connection with the respondent's business and legal relationship to Lake. According to the hearing board, the primary factor underlying Lake's selection of the respondent as a lawyer was the respondent's willingness to work on a "trade basis" and his interest in becoming Lake's business partner. The hearing board also found some mitigation in the respondent's dealings with Arnold. Arnold had a law degree, yet, in the board's view he seemed incredibly naive about the simplest form of loan transaction. Furthermore, the hearing board made express reference to the fact that Arnold had filed a lawsuit against the respondent to collect the loan and, even more important, that "none of the complaining witnesses seemed to have suffered substantial provable losses."

While there are some mitigating factors in this matter, we are nonetheless satisfied that the serious and continued nature of the respondent's professional misconduct warrants the suspension of his license to practice law in this state for an extended period of time. The respondent is accordingly suspended from the practice of law for a period of three years and is ordered to surrender forthwith his license to practice law in this state to the Clerk of the Supreme Court. The respondent is further ordered to comply with all the provisions of C.R.C.P. 241.21 relating to termination of all legal matters, the giving of notice to all clients and opposing counsel, and the maintenance of appropriate records as proof of compliance. It is further ordered that the respondent shall not be eligible for reinstatement prior to the expiration of the period of suspension herein imposed, and that any application for reinstatement must be supported by clear and convincing evidence that the respondent is fit to practice law and has complied with the reinstatement requirements of C.R.C.P. 241.22.

The respondent is ordered to pay the costs of these proceedings in the amount of $790.58 by tendering this sum to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500S, Dominion Plaza, Denver, Colorado, 80203, within sixty days of this date.